## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DERRELL FULTON, a.k.a. DARRYL   )
FULTON,   )
  )
      Plaintiff,   )
  )
    v.   )    Case No. 17-cv-8696
  )
CHICAGO POLICE OFFICERS WILLIAM   )    Honorable Judge Robert W.
FOLEY, #20450, et al.,   )    Gettleman, Judge Presiding.
  )
      Defendants.   )

### PLAINTIFF'S MOTION FOR LEAVE
### TO FILE A SECOND AMENDED COMPLAINT

Now comes Plaintiff, Derrell Fulton, by and through his attorneys, Kathleen T. Zellner & Associates, P.C., and pursuant to FRCP 15(a)(2), hereby moves this Court for leave to file a second amended complaint. In support thereof, Plaintiff states as follows:

1. Plaintiff filed his original complaint on December 1, 2017, and a First Amended Complaint on March 13, 2018.

2. The complaint is brought under 42 U.S.C. § 1983, and it alleges that the individually-named defendants violated Plaintiff's constitutional rights by fabricating evidence and coercing his confession, thereby causing his unjust conviction and incarceration.

3. Plaintiff seeks leave to file a second amended complaint, a copy of which is attached as Exhibit A.

1

4. The original and first amended complaint inadvertently name <u>Edward</u> Carroll, Star No. 20346, as a defendant. The correct defendant is <u>Gerald</u> Carroll, Star No. 20346.

5. The proposed second amended complaint names Gerald Carroll as defendant in place of Edward Carroll.

6. All of Plaintiff's causes of action are well within the applicable statute of limitations, written discovery has only just begun, and granting the instant motion would therefore not unfairly prejudice any Defendant.

7. Plaintiff has reached out to opposing counsel concerning this motion but has not heard back as to whether any Defendant has an objection.

Wherefore, Plaintiff respectfully requests that this Court grant him leave to file a second amended complaint.

Dated: June 18, 2018
Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Email: attorneys@zellnerlawoffices.com

**<u>Proof of Service</u>**

I hereby certify that on June 18, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Norther District of Illinois. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| DERRELL FULTON, a.k.a. DARRYL FULTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-CV-8696 |
| CHICAGO POLICE OFFICERS WILLIAM FOLEY, #20450, MICHAEL CLANCY, #20395, JOHN HALLORAN, #20453, KENNETH BOUDREAU, #20435, JAMES O'BRIEN, #20466, GERALD CARROLL, #20346, WILLIAM MOSER, #20465, ALBERT GRAF, #20480, STANLEY TURNER, #20874, THOMAS BENOIT, #2249,OTHER UNIDENTIFIED CHICAGO POLICE OFFICERS, THE CITY OF CHICAGO, ASSISTANT STATE'S ATTORNEY HAROLD GARFINKEL, and COOK COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Judge Robert W. Gettleman, Judge Presiding. |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff DERRELL FULTON, a.k.a. DARRYL FULTON, by and through his attorneys, Kathleen T. Zellner & Associates, P.C., complains of Defendants, CHICAGO POLICE OFFICERS WILLIAM FOLEY, MICHAEL CLANCY, JOHN HALLORAN, KENNETH BOUDREAU, JAMES O'BRIEN, GERALD CARROLL, WILLIAM MOSER, ALBERT GRAF, STANLEY TURNER, THOMAS BENOIT, OTHER UNIDENTIFIED CHICAGO POLICE OFFICERS, THE CITY OF CHICAGO, ASSISTANT STATE'S ATTORNEY HAROLD GARFINKEL, and COOK COUNTY, and alleges as follows:

1

Exhibit A

## Introduction

1.    In April of 1994 and continuing thereafter, the above-named Defendants entered into and executed a conspiracy to cause Plaintiff's unlawful arrest and subsequent prosecution for a brutal rape and murder he did not commit. The centerpiece of the conspiracy was Plaintiff's purported "confession," a statement which the Defendants coerced from Plaintiff through physical force, mental coercion, and false promises of leniency.  Defendants likewise fabricated evidence from other witnesses to bolster charges they knew to be otherwise without probable cause.  As a direct and proximate result of Defendants' egregious misconduct, Plaintiff was convicted and incarcerated more than 23-and-a-half years for crimes in which he had no involvement.  This lawsuit seeks redress for the extreme hardship and incalculable harm Defendants thereby caused Plaintiff to suffer.

## Jurisdiction and Venue

2.    This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under Illinois state law.

3.    This Court has original jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper under 28 U.S.C. § 1391(b) as, on information and belief, Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## The Parties

5.     Plaintiff Derrell Fulton ("Plaintiff") is a resident and citizen of the state of Illinois.

6.     At all relevant times, Defendants William Foley ("Defendant Foley"), Michael Clancy ("Defendant Clancy"), John Halloran ("Defendant Halloran"), Kenneth Boudreau ("Defendant Boudreau"), James O'Brien ("Defendant O'Brien"), Gerald Carroll ("Defendant Carroll"), William Moser ("Defendant Moser"), Albert Graf ("Defendant Graf"), Stanley Turner ("Defendant Turner"), Thomas Benoit ("Defendant Benoit") and other Unidentified Chicago Police Officers were duly appointed members of the Chicago Police Department.

7.     The Defendant Officers are named in their individual capacity.

8.     At all relevant times, the Defendant Officers were acting under color of state law and in the course and scope of their employment with the City of Chicago.

9.     At all relevant times, Defendant City of Chicago ("the Defendant City") was an Illinois municipal corporation.  Defendant City of Chicago is liable for the wrongful acts and omissions of the Defendant Officers taken in the course and scope of their employment pursuant to the Defendant City of Chicago's statutory obligation to indemnify them.

10.     At all relevant times, Defendant Harold Garfinkel ("Defendant Garfinkel") was an attorney licensed to practice law in the State of Illinois and a duly appointed Cook County Assistant State's Attorney.

11.     Defendant Garfinkel is sued in his individual capacity.

3

12.     At all relevant times, Defendant Garfinkel was acting under color of state law and in the course and scope of his employment with Defendant Cook County.

13.     At all relevant times, Defendant Cook County was a County within the state of Illinois.  Defendant Cook County is liable for the wrongful acts and omissions of Defendant Garfinkel taken in the course and scope of his employment pursuant to Defendant Cook County's statutory obligation to indemnify him.

<u>**Factual Allegations**</u>

***The Murder of Antwinica Bridgeman***

14.     On or about April 11, 1994, Antwinica Bridgeman ("Bridgeman") went missing after attending a birthday party at 923 W. 55th Street in Chicago, Illinois.

15.     On April 28, 1994, Nevest Coleman ("Coleman") and Michael Barger discovered Bridgeman's body in the basement of 917 W. 55th Street.

16.     Police were contacted.

17.     All of the above-named Defendant Officers took part in the subsequent investigation under the supervision of Defendant Benoit.

18.     Bridgeman had been the victim of a brutal sexual assault and murder.

19.     A six-inch pipe had been inserted into Bridgeman's vagina.  Two inches of the pipe remained exposed.

20.     A piece of rock or concrete had been forced into Bridgeman's mouth and down her throat.

21.    An autopsy determined that the cause of Bridgeman's death was suffocation.

22.    The basement in which Bridgeman's body had been found was accessible only from a doorway that exited into the gangway to the west of the Coleman residence.

23.    The Defendant Officers observed various items in the basement, including two used condoms, beer cans, and other beverage containers.

24.    Two hand-rolled cigarettes containing PCP were found near the door into the basement.

25.    Employees at the Cook County Medical Examiner's Office recovered various items of clothing that the victim was wearing when her body was discovered.  This included the victim's underwear and a yellow sweatshirt.

26.    The Cook County Medical Examiner's Office also collected fingernail clippings from the victim's right and left hands.

27.    The victim's underwear, sweatshirt, and fingernails were given to police and maintained as evidence.

### *Information Purportedly Provided by Chester Latham*

28.    After Bridgeman's body was removed from the scene, Defendants Foley and Clancy interviewed Chester Latham ("Latham") at the Cook County Medical Examiner's Office.

29.    Latham informed Defendants Foley and Clancy that he last saw Bridgeman the day before her disappearance.

30. According to Latham, while he was with Bridgeman he observed a hickey on her neck.

31. Latham informed Defendants Foley and Clancy that he asked Bridgeman how she got the hickey.

32. Latham purportedly told Defendants Foley and Clancy that Bridgeman told Latham that a person named "Chip" had tried to forcibly sexually assault her, but that she fought him off and ran away from him.

33. Latham also told Defendants Foley and Clancy that Bridgeman had changed allegiances from the Vice Lords to the Gangster Disciples.

34. According to Defendants Foley and Clancy, Latham told them that two individuals nicknamed "Chip" and "Dap" were "bothering" Bridgeman about her changing gangs.

### *The Defendant Officers Target Plaintiff*

35. The Defendant Officers subsequently determined Eddie Taylor to be the "Chip" referenced by Latham.

36. The Defendant Officers subsequently determined Plaintiff to be the "Dap" referenced by Latham.

37. Despite the lack of any credible information suggesting that Plaintiff was involved in the brutal sexual assault and murder of Bridgeman, the Defendant Officers targeted him based solely on the information ostensibly provided by Latham.

38.     After Defendants Foley and Clancy interviewed Latham, the Defendant Officers entered into a conspiracy to falsely implicate Plaintiff by any means necessary.

### The Defendant Officers and Defendant Garfinkel Fabricate Evidence against Plaintiff

39.     In the early-morning hours of April 29, 1994, Defendants Halloran and Boudreau arrested Nevest Coleman and transported him to Area 1.

40.     At no time did any of the Defendant Officers give Coleman his *Miranda* rights.

41.     Coleman was interrogated by the Defendant Officers.

42.     Coleman denied any involvement in the victim's sexual assault and murder.

43.     The Defendant Officers left the interrogation room.

44.     Approximately 30 minutes later, an Unidentified Defendant Officer entered the room.

45.     The Unidentified Defendant Officer called Coleman a "lying-assed nigger."

46.     Coleman told the Unidentified Defendant Officer that he was not lying, and that he had told the Defendant Detectives all that he knew.

47.     The Unidentified Defendant Officer then hit Coleman twice on the right side of Coleman's head with a closed fist.

48. All of the Defendant Officers, including Defendant Benoit, were aware that the Unidentified Defendant Officer entered the interrogation room to threaten and physically abuse Coleman.

49. All of the Defendant Officers, including Defendant Benoit, were aware that the Unidentified Defendant Officer threatened and physically abused Coleman.

50. Later, a different Unidentified Defendant Officer falsely told Coleman that if he just answered their questions, he would be able to go home.

51. Once again, all of the Defendant Officers, including Defendant Benoit, were aware that one of the Unidentified Defendant Officers falsely told Coleman that if he just answered their questions he would be able to go home.

52. The Defendant Officers contacted Defendant Garfinkel and requested that he report to the Area.

53. Defendant Garfinkel joined the investigation and entered into the Defendant Officers' conspiracy to falsely implicate Plaintiff in the assault and murder.

54. Defendant Garfinkel interviewed Coleman.

55. At the time Defendant Garfinkel interviewed Coleman, there was no probable cause to believe that Plaintiff perpetrated the sexual assault and murder of Bridgeman.

56. Coleman told Defendant Garfinkel that the Unidentified Defendant Officer had physically abused him.

8

57. Coleman told Defendant Garfinkel that he had no involvement in Bridgeman's assault and murder.

58. Defendant Garfinkel did not prepare a statement reflecting Coleman's claim that an officer had physically abused him, or that Coleman denied any involvement in Bridgeman's assault and murder.

59. Instead, Defendant Garfinkel falsely told Coleman that they would worry about the officer having hit him at a later date.

60. Defendant Garfinkel falsely told Coleman that he was there to help Coleman.

61. The Defendant Officers and Defendant Garfinkel falsely told Coleman that if he went along with their version of his "confession," Coleman would be allowed to go home.

62. The Defendant Officers and Defendant Garfinkel described a scenario for Coleman in which he, Plaintiff, and Eddie Taylor participated in the rape and murder of Bridgeman.

63. The Defendant Officers and Defendant Garfinkel rehearsed with Coleman what he was to say in front of the court reporter.

64. Defendant Garfinkel thereafter led Coleman through a court-reported "confession," which Coleman signed.

65. The Defendant Officers and Defendant Garfinkel knew that Coleman's "confession" was fabricated, and that Coleman only gave the statement as the result of the physical and mental coercion to which they subjected him.

9

66. The Defendant Officers subsequently memorialized the false statements they attributed to Coleman in police reports, which were used to support the charges against Plaintiff and deny him bond pending trial.

### The Defendant Officers and Defendant Garfinkel Unlawfully Coerce a False Confession From Plaintiff

67. Based on the information from Coleman they knew to be false, Defendants Foley, Halloran, Boudreau, O'Brien, and Carroll went to Plaintiff's residence and arrested him.

68. Plaintiff arrived at the Area at approximately 7:30 a.m. on April 29, 1994.

69. Plaintiff was placed in a small interrogation room and handcuffed to a ring on the wall.

70. At no time was Plaintiff given his *Miranda* warnings.

71. The Defendant Officers interrogated Plaintiff.

72. Plaintiff denied any involvement in the offense.

73. During the course of Plaintiff's interrogation, an Unidentified Defendant Officer entered the room and hit Plaintiff in the face.

74. The same Unidentified Defendant Officer threatened to remove Plaintiff from the station and "put a bullet in his brain."

75. All of the Defendant Officers, including Defendant Benoit, were aware that the Unidentified Defendant Officer threatened and physically abused Plaintiff.

76. Defendant Garfinkel then interviewed Plaintiff.

10

77. At the time Defendant Garfinkel interviewed Plaintiff, there was no probable cause to believe that Plaintiff perpetrated the sexual assault and murder of Bridgeman.

78. Defendant Garfinkel knew that Plaintiff had been physically coerced and threatened by the Unidentified Defendant Officer prior to his interview.

79. Defendant Garfinkel showed Coleman's fabricated court-reported statement to Plaintiff.

80. Plaintiff continuously told Defendant Garfinkel that he had nothing to do with the crime.

81. Defendant Garfinkel falsely told Plaintiff that if he gave a statement, he would be released.

82. Defendant Garfinkel then prepared a handwritten statement, dictating to Plaintiff his involvement in Bridgeman's rape and murder.

83. The handwritten statement further implicated Coleman and Eddie Taylor in the crime.

84. Plaintiff signed the "confession."

85. The Defendant Officers and Defendant Garfinkel knew that Plaintiff's "confession" was fabricated, and that Plaintiff only gave the statement as the result of the physical and mental coercion to which they subjected him.

86. The Defendant Officers subsequently memorialized the false statements they attributed to Plaintiff in reports, which were used to support the charges against Plaintiff and deny him bond pending trial.

11

### *Plaintiff's Charges, Trial, and Conviction*

87.    Based on Coleman's and Plaintiff's "confessions," Plaintiff was charged with first-degree murder and aggravated criminal sexual assault.

88.    Plaintiff was charged under the name "Darryl Fulton," which is an incorrect spelling of his first name.

89.    Coleman's and Plaintiff's "confessions" were used by the State and relied on by the trial court in denying Plaintiff bond.

90.    At Plaintiff's trial, the only evidence connecting him to the offense was the fabricated statements and confession attributed to him by the Defendant Officers and Defendant Garfinkel.

91.    On May 13, 1997, Plaintiff was convicted following a jury trial of both murder and aggravated criminal sexual assault.

92.    On July 28, 1997, the State filed a written motion to qualify Plaintiff as death-eligible.

93.    On July 29, 1997, the trial court denied the State's motion, and instead sentenced Plaintiff to natural life.

### *Post-Conviction DNA Testing Exonerates Plaintiff*

94.    In 2016, the Conviction Integrity Unit of the Cook County State's Attorney's Office ("the CIU") initiated a re-examination of Plaintiff's conviction.

95.    In June of 2016, the CIU submitted several items of evidence to the Illinois State Police Division of Forensic Services ("the ISP Lab").

96.     Among the items submitted to the ISP Lab included the sweatshirt and underwear the victim was wearing when her body was recovered, as well as her fingernail clippings.

97.     The ISP Lab performed testing that indicated the presence of semen at several locations on the victim's sweatshirt.

98.     The ISP Lab performed testing that indicated the presence of semen inside the victim's underwear, as well as "blood-like stains."

99.     In December of 2016, the CIU agreed to submit several items of evidence for DNA testing, including the victim's sweatshirt, underwear, and nail clippings.

100.    A partial male profile was obtained from the victim's left-hand fingernail clippings.  Plaintiff, Coleman, and Eddie Taylor are all excluded from that profile.

101.    A partial male profile was obtained from the semen stain on the victim's underwear.  Plaintiff, Coleman, and Eddie Taylor are all excluded from that profile.

102.    The partial male profile obtained from the victim's left-hand fingernail clippings is consistent with the partial male profile obtained from the semen stain on the victim's underwear.

103.    The partial male profile obtained from the underwear was uploaded into the Combined DNA Indexing System ("CODIS").

104.    The partial male profile obtained from the semen stain in the victim's underwear "hit" on the DNA profile of an individual who, on information and belief, has been convicted of multiple rapes ("the CODIS hit").

105.    Partial male profiles were obtained from two of the semen stains on the victim's sweatshirt.  Plaintiff, Coleman, and Eddie Taylor are all excluded from those profiles.  The CODIS hit could not be excluded from the profiles.

106.    Several other items were submitted for examination and possible DNA analysis, including the rock and pipe, other pieces of the victim's clothing, hairs recovered from the victim's clothing, and the bottles found at the scene.

107.    Plaintiff has been excluded from every single piece of forensic evidence connected to the rape and murder that is capable of being tested.

### *Plaintiff's Convictions are Vacated and the Charges Against him Dropped*

108.    Upon the motion of the State, Plaintiff's convictions and sentences were vacated on November 17, 2017, and he was ordered to be released on an I-Bond.

109.    On November 20, 2017, Plaintiff was released from prison after more than 23-and-a-half years of incarceration.

110.    On December 1, 2017, the Cook County State's Attorney's Office moved to dismiss all of the charges against Plaintiff, thus terminating the proceedings in Plaintiff's favor.

14

### *Defendants' Pattern and Practice of Coercing False Confessions*

111.   The Defendant Officers' misconduct was undertaken pursuant to, and was proximately caused by, a policy and practice on the part of the Defendant City to secure convictions through the use of physically and mentally coerced "confessions."

112.   For example, in November of 1992, Defendants Boudreau, Halloran, and O'Brien coerced Harold Hill, Dan Young, and Peter Williams to give false, interlocking confessions to the rape and murder of Kathy Morgan.  No charges were filed against Williams, because it was later determined that he was incarcerated at the time of the crime.  Hill and Young were convicted based on the false confessions, and spent several years incarcerated for the crime until subsequent DNA testing implicated two other individuals.

113.   In 1993, Defendants Boudreau and Halloran extracted a confession to the murder of Marshall Morgan, Jr., from Wayne Washington.  The primary evidence against Washington was his confession.  Washington claimed that Defendants Boudreau and Halloran beat and slapped him, causing him to falsely confess.  Nevertheless, Washington pleaded guilty to murder due to his purported confession.  In 2015, the State asked that Washington's conviction be vacated after a re-investigation of the case pointed to another individual as the perpetrator.

114.   Defendants Foley and Boudreau were heavily involved in the "Englewood Four" case, in which four defendants gave "confessions" to a rape and murder that took place in 1994.  The four defendants claimed that their confessions

were the product of physical and mental abuse. All four were later exonerated when DNA testing excluded the defendants and implicated a serial rapist.

115. Defendants Boudreau, Halloran, and O'Brien physically coerced Derrick Flewellen into confessing to two separate murders that occurred in 1995. Once again, subsequent DNA testing exculpated Flewellen.

116. Numerous other criminal defendants have alleged that the Defendant Officers – most prominently, Defendants Boudreau, Halloran, and O'Brien – physically and mentally coerced false confessions from them, including the following: Fred Ewing, Darnell Stokes, Marcus Wiggins, Antoine Ward, Jesse Clemon, Kilroy Watkins, Clayborn Smith, Richard Malek, Oscar Gomez, Eric Gomez, Abel Quinones, Tyrone Reyna, Nicholas Escamilla, Joseph Jackson, John Plummer, Arnold Day, Richard Anthony, Emmett White, Javan Deloney, Curtis Milsap, Anthony Williams, and Frank Bounds.

117. Policy-making officials with the Defendant City had full knowledge of its detectives' widespread pattern of physically and mentally coercing criminal defendants' "confessions," and allowed it to continue by failing to adequately train, supervise, and discipline its employees for perpetrating the constitutional violations described herein.

### *Plaintiff's Damages*

118. As a result of the Defendants' misconduct, Plaintiff spent 8,607 days incarcerated for a crime he did not commit. Plaintiff endured the stigma of having perpetrated a brutal rape and murder in which he had no involvement. Even more

16

so, Plaintiff suffered incalculable mental anguish and emotional pain stemming from his lengthy incarceration. He missed spending hundreds of holidays, birthdays, and social gatherings with family and friends. Plaintiff has lost the opportunity to be a father to his daughter, having been incarcerated for almost her entire life. At the same time, Plaintiff was locked up in an environment where any day he could have been beaten, sexually assaulted, or even murdered. Plaintiff languished in his prison cell, not knowing if he would spend the remainder of his life behind prison walls.

119. Plaintiff's damages include, but are not limited to, emotional distress, mental anguish, humiliation, loss of liberty, loss of freedom of movement, loss of enjoyment of life, loss of consortium, and other non-pecuniary losses.

## Causes of Action

### COUNT I

### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Fabrication of Evidence
### (Against All Individually-Named Defendants)

120. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

121. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, deprived Plaintiff of his constitutional right to due process by deliberately fabricating statements, reports, and other evidence.

17

122. The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

123. The Defendants' misconduct described herein shocks the conscience.

124. As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated criminal sexual assault and first-degree murder.

125. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

126. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT II

### 42 U.S.C. § 1983 – 5th and 14th Amendment Due Process
### Coerced Confession
### (Against All Individually-Named Defendants)

127. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

128. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, deprived Plaintiff of his constitutional right to be free from compelled self-incrimination.

129.   As described more fully above, the Defendants did not provide Plaintiff with any *Miranda* warnings and denied Plaintiff access to legal counsel for the duration of his interrogation.

130.   As described more fully above, the Defendants coerced Plaintiff through physical violence, threats of physical violence, and false promises of leniency.

131.   As a result of the misconduct described herein, the Defendants compelled Plaintiff to sign a false confession.

132.   The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

133.   The Defendants' misconduct described herein shocks the conscience.

134.   As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated criminal sexual assault and first-degree murder.

135.   As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

136.   As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated criminal sexual assault and first-degree murder.

137.   As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT III

**42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**
**(Against All Individually-Named Defendants)**

138.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

139.   As described more fully above, after the discovery of Antwinica Bridgeman's body, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime and to thereby deprive Plaintiff of his constitutional rights as described in the Counts above.

140.   As described more fully above, all of the Defendants had knowledge of and/or participated in the fabrication of evidence against Plaintiff in the form of Nevest Coleman's false confession, the details of which were supplied by the Defendants.

141.   As described more fully above, all of the Defendants were aware that Plaintiff's false confession was the product of physical and mental coercion, the details of which were supplied by the Defendants and calculated to coincide with Coleman's false confession.

142.   In this manner, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

143. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

144. The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

145. The Defendants' misconduct described herein shocks the conscience.

146. As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated criminal sexual assault and first-degree murder.

147. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

148. As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated criminal sexual assault and first-degree murder.

149. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT IV

### 42 U.S.C. § 1983 – Failure to Intervene
### (Against All Individually-Named Defendants)

150. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

151. As described more fully above, during the constitutional violations alleged herein, one or more of the Defendants stood by without intervening to prevent the misconduct.

152. The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

153. As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated criminal sexual assault and first-degree murder.

154. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

155. As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated criminal sexual assault and first-degree murder.

156. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT V

### 42 U.S.C. § 1983 – Supervisory Liability
### (Against Defendant Benoit)

157.    Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

158.    Defendant Benoit supervised the other Defendant Officers in the investigation of Bridgeman's murder.

159.    As described more fully above, Defendant Benoit knew that the other Defendant Officers and Defendant Unidentified Officers fabricated evidence and coerced false confessions from Plaintiff and Coleman.

160.    As described more fully above, Defendant Benoit knew that the other Defendant Officers and Defendant Unidentified Officers had a practice of fabricating evidence and coercing confessions in similar situations.

161.    Defendant Benoit approved, assisted, condoned, and/or purposely ignored the Defendant Officers' and Unidentified Officers' unconstitutional conduct.

162.    Defendant Benoit's misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

163.    As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated criminal sexual assault and first-degree murder.

164.    As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

23

165.   As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated criminal sexual assault and first-degree murder.

166.   As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT VI

### 42 U.S.C. § 1983 – *Monell*
### (Defendant City of Chicago)

167.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

168.   As described more fully above, final policy-making officials for the Defendant City had actual knowledge of the widespread pattern and practice of coercing false confessions by its police officers, including the practices of the specific Defendant Officers named in this lawsuit.

169.   Thus, the actions of the Defendant Officers, as described more fully above, were undertaken pursuant to the policies and practices of the Defendant City.

170.   These policies include the failure to adequately train, supervise, and discipline officers who engaged in the alleged constitutional violations described herein.

171.    The policies and practices described in this Count were implement and maintained by the Defendant City with deliberate indifference to Plaintiff's constitutional rights.

172.    As a direct and proximate result of the Defendant City's policies and practices, Plaintiff's constitutional rights were violated.

173.    As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated criminal sexual assault and first-degree murder.

174.    As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above

## COUNT VII

### Illinois State Law – Malicious Prosecution
### (Against All Individually-Named Defendants)

175.    Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

176.    As described more fully above, the Defendants knowingly and maliciously initiated and/or caused judicial proceedings to continue against Plaintiff without probable cause.

177.    The prosecution terminated in Plaintiff's favor on December 1, 2017, when all charges were *nolle prosequi*.

178.   As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT VIII

### Illinois State Law – Intentional Infliction of Emotional Distress
### (Against All Individually-Named Defendants)

179.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

180.   As described more fully above, the Defendants' misconduct was extreme and outrageous.

181.   As described more fully above, the Defendants intended to cause, or were in reckless disregard of the probability that there misconduct would cause, severe emotional distress to Plaintiff.

182.   As a direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to severe emotional distress and mental anguish as more fully described above.

## COUNT IX

### Illinois State Law – Conspiracy
### (Against All Individually-Named Defendants)

183.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

184.   As described more fully above, the Defendants together reached an understanding, engaged in a course of conduct, engaged in a joint action, and

otherwise conspired among and between themselves to maliciously prosecute Plaintiff without probable cause and to intentionally inflict emotional distress.

185.    As described more fully above, in furtherance of the conspiracy, the Defendants committed overt acts including the fabrication of Nevest Coleman's statement, the unlawful coercion of Plaintiff's "confession," and the falsification of witness statements in police reports.

186.    The conspiracy alleged herein was initiated on or about April 28, 1994, and continues to the present.

187.    As a direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above

## COUNT X

### Illinois State Law – Indemnification
### (Against the City of Chicago and Cook County)

188.    Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

189.    Defendant City of Chicago was the employer of each of the Defendant Officers at all times relevant to this complaint.

190.    All of the individually-named Defendant Officers were acting within the course and scope of their employment at all times relevant to this complaint.

191.    Defendant Cook County was the employer of Defendant Garfinkel at all times relevant to this complaint.

192.   Defendant Garfinkel was acting within the course and scope of his employment at all times relevant to this complaint.

193.   Pursuant to 745 ILCS 10/9-102, Defendant City of Chicago and Defendant Cook County are liable to pay all judgments and settlements entered against their respective employees for the claims set forth above.

## COUNT XI

### Illinois State Law – *Respondeat Superior*
### (Against the City of Chicago and Cook County)

194.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

195.   Defendant Garfinkel and the Defendant Officers acted as agents of, and in the scope of their employment with, Defendants Cook County and City of Chicago, respectively, at all times relevant to this complaint.

196.   Defendants Cook County and City of Chicago are liable for the state-law torts of their employees under the doctrine of *respondeat superior*.

## **Prayer for Relief**

Wherefore, Plaintiff, Derrell Fulton, a.k.a. Darryl Fulton, respectfully requests that this Court enter judgment in his favor and against Defendants William Foley, Michael Clancy, John Halloran, Kenneth Boudreau, James O'Brien, Gerald Carroll, William Moser, Albert Graf, Stanley Turner, Thomas Benoit, Other Unidentified Chicago Police Officers, the City of Chicago, Harold Garfinkel, and Cook County, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individually-named Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

## **Jury Demand**

Plaintiff, Derrell Fulton, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Fax: 630-955-1111
Email: kathleen.zellner@gmail.com