# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NEVEST COLEMAN, | ) | |
| | ) | |
| | ) | Case No. 1:18-cv-00998 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DERRELL FULTON, aka DARRYL FULTON, | ) ) | |
| | ) | Case No. 1:17-cv-08696 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants' Joint Motion Challenging Plaintiffs' Psychotherapist-Patient Privilege Assertion [Coleman 165, Fulton 183][1] asks this Court to: (1) find that Plaintiffs have waived any psychotherapist-patient privilege over their mental health and substance abuse records; and (2) enter Defendants' proposed Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Mental Health Protective Order. Doc [165] at 1.

---

[1] The remainder of this Memorandum Opinion and Order cites to documents from the *Coleman* docket, Case No. 1:18-cv-00998.

For the reasons stated below, Defendants' motion is granted.

## Background

In 1994, Plaintiffs Derrell Fulton and Nevest Coleman were arrested and charged with rape and murder. Doc. [123] at 1. Plaintiffs were subsequently convicted and sentenced to lengthy prison terms. *Id.* After spending over 23 years in prison, DNA testing on the victim's fingernails and clothing allegedly exonerated Plaintiffs. *Id.*; Doc. [168] at 2.

In the instant, parallel litigations, Plaintiffs allege that they were wrongfully convicted and incarcerated as a result of the individually-named defendants' conduct. Doc. [123] at 2. More specifically, Plaintiffs allege that the individually-named defendants physically and mentally coerced false confessions from them. *Id.* Plaintiffs accordingly assert causes of action under 42 U.S.C. § 1983 for fabrication of evidence, coerced confession, conspiracy, and failure to intervene. *Id.* Plaintiffs further allege related state-law claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy. *Id.* Against Defendant City of Chicago, Plaintiffs allege *Monell* claims. *Id.*

## Discussion

**I.  Psychotherapist-Patient Privilege Has Been Waived**

Defendants have issued document subpoenas seeking Plaintiffs' mental health records from multiple institutions, including prisons where Plaintiffs were incarcerated. Doc. [168] at 2. For example, the Hill Correctional Center subpoena at issue in the parties' briefing seeks "all medical and mental health treatment records" relating to Nevest Coleman. [168-1] at 1. Plaintiff Coleman asserts that Plaintiffs enjoy psychotherapist-patient privilege over such mental health records. Doc. [168] at 2. Defendants argue that Plaintiffs waived their psychotherapist-patient

privilege when they "put their emotional and psychological injuries at the forefront of their damages claims." Doc. [165] at 4.

The federal common law psychotherapist-patient privilege prevents disclosure of confidential communications between a licensed psychotherapist or social worker and a patient in the course of diagnosis or treatment. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Id.* at 11. Like other testimonial privileges, the holder may waive the psychotherapist-patient privilege. *Id.* at 15 n.14.

Courts following *Jaffee* have devised three approaches to determine when a patient has waived psychotherapist-patient privilege: (1) a broad application of waiver; (2) a narrow application; and (3) a middle ground. *See generally Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 513 (N.D. Ill. 2018). Under the broad approach, a patient waives psychotherapist-patient privilege "by merely seeking damages for emotional distress." *Id.* at 513 (citation omitted). With the narrow application, a patient waives the privilege "only when she affirmatively relies on her communications with the psychotherapist or calls the therapist as a witness." *Taylor v. Chicago*, No. 14 C 737, 2016 WL 5404603, at *2 (N.D. Ill. Sept. 28, 2016). According to the "middle ground" approach, a waiver does not occur when the patient is only seeking "garden variety" damages. *Id.* (citation omitted). Although there is no single definition for "garden variety" damages, at least one court in this Circuit has defined "garden variety" damages as meaning: "the 'negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct,' but not the 'resulting symptoms or conditions that she might have suffered.'"

*Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011) (quoting *Santelli v. Electro–Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999)).

Defendants argue that the Seventh Circuit's decision in *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), adopts the broad approach. Doc. [165] at 5-6. Defendants specifically highlight the *Oberweis* Court's statement that, "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Id.* at 5 (internal quotation marks omitted) (quoting *Oberweis*, 456 F.3d at 718). Defendants are not alone in their reading of *Oberweis*. *See Laudicina*, 328 F.R.D. at 514 (finding Seventh Circuit adopted broad approach in *Oberweis* and collecting cases within and outside Seventh Circuit recognizing broad waiver of psychotherapist-patient privilege in Seventh Circuit); *Taylor*, 2016 WL 5404603, at *2-3 (holding Seventh Circuit employed the broad approach in *Oberweis*). However, numerous judges in this district have analyzed this issue, with no consensus as to what the Seventh Circuit truly meant with its brief statement, without much analysis, in *Oberweis*.

Coleman apparently argues against the broad approach by stating that Plaintiffs' pleading of emotional damages, alone, does not establish that they have waived the privilege over their entire mental health histories. Doc. [168] at 4. He further argues that courts in this district read *Oberweis* more narrowly, and that the majority of courts have found that a party waives psychotherapist-patient privilege by claiming damages in situations in which the party plans to introduce evidence of psychological treatment at trial. *Id.* at 6-7 (citing *Caine v. Burge*, No. 11 CV 8996, 2012 WL 6720597, at *2 (N.D. Ill. Dec. 27, 2012)).

On these facts, the Court need not decide which waiver approach applies in this Circuit because Coleman has waived psychotherapist-patient privilege under any approach. Beginning

4

with the broad approach, Coleman has pleaded damages for emotional distress. Doc. [144] ¶¶ 139 (emotional distress from lack of fair trial), 146 (emotional distress caused by conspiracy to deprive Coleman of constitutional rights), 165 (emotional distress from civil conspiracy), 178 (damages for state law claim of intentional infliction of emotional distress). Thus, Coleman has waived psychotherapist-patient privilege under the broad approach.

Moving on to the middle ground approach, Coleman has sought more than "garden variety" emotional damages in this case. That is, Coleman is not simply seeking damages for negative emotions that resulted from Defendants' conduct, but rather the resulting conditions and symptoms Coleman claims to suffer as a result of Defendants' conduct. *Flowers*, 274 F.R.D. at 225. In response to interrogatories about psychological injuries, Coleman reports he has "anxious and worried feelings when in large groups of people," and has experienced "trouble sleeping, high blood pressure, and weight gain." Doc. [165-3] at 14-15; Doc. [165-7] at 15-16. These alleged conditions and symptoms indicate that Coleman is not simply seeking "garden variety" emotional damages. Moreover, Coleman was incarcerated for 23 years for a crime that he claims he did not commit. It is hard to conceive of any situation in which these emotional damages claims constitute "garden variety." The emotional damages that result from being wrongfully accused of rape and murder, allegedly coerced into confessing to a crime, and incarcerated for 23 years, and the mental anguish that results from the daily stress, anxiety, and humiliation of being deprived of one's liberty and taken away from one's family is bound to result in more than just ordinary negative emotions. He has therefore waived psychotherapist-patient privilege under the middle ground approach as well.

Finally, even under the narrow approach, Coleman has waived psychotherapist-patient privilege because he has produced psychotherapist records in support of his case. In response to

5

Defendants' written discovery requests, Coleman has produced records pertaining to mental health treatment he received from a non-profit treatment center. Doc. [165] at 2. According to Defendants, these psychotherapy records include "observations as to the severity of [Coleman's] emotional and psychological trauma." *Id.* Because Coleman has "affirmatively relie[d] on [his] communications with the psychotherapist," *Taylor*, 2016 WL 5404603, at *2, he has waived psychotherapist-patient privilege pursuant to the narrow approach. Put another way, if Plaintiff was really seeking minimum emotional damages without support from a treater, he probably would not have already produced privileged, psychotherapy records showing his diminished mental state.

Coleman argues that Plaintiffs have not waived psychotherapist-patient privilege yet because they cannot make a knowing waiver without knowing what the records contain. Doc. [168] at 4. Coleman also asserts that, because the case is still in the discovery phase, it is his strategic choice still to limit his damages to "garden variety" ones and thereby maintain psychotherapist-patient privilege. *Id.* at 5-6. In support of Coleman's contention that waiver has not yet occurred, Coleman cites four cases: (1) *Flowers*, 274 F.R.D. 218; (2) *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983 (N.D. Ill. 2010); (3) *Glaze v. City of Chicago*, 14 C 3120 (N.D. Ill.), Dkt. 92 (order on motion to quash); and (4) *Caine*, 2012 WL 6720597.

None of Coleman's authority persuades the Court that Coleman has not already waived psychotherapist-patient privilege. Importantly, the posture of the privilege-holder in each of Coleman's cited cases was decidedly different from Coleman's. For much of Coleman's authority, Defendants are correct that, "it was not clear whether plaintiffs were seeking 'garden variety' damages or to what extent they had placed their mental health at issue in the case." Doc. [171] at 3.

In *Flowers*, a former inmate sued correctional officers under 42 U.S.C. § 1983. 274 F.R.D. at 220. Like Coleman's complaint, the *Flowers* complaint included damages claims for emotional suffering. *Id.* However, the *Flowers* parties agreed on the record during the plaintiff's deposition that psychotherapist-patient privilege would remain intact, so long as the plaintiff limited his claim to "garden variety" emotional damages and forewent expert trial testimony regarding emotional suffering. *Id.* In the course of the deposition, "it became apparent that the parties had very different notions of what could grow in the garden." *Id.* More specifically, the disagreement that sparked the *Flowers* briefing occurred when counsel for plaintiff announced at the deposition that he planned to introduce evidence at trial that plaintiff did not want to leave his home because he was afraid of the defendants. *Id.* at 221. The plaintiff contended that his ongoing fear that if he left his house he was going to be harmed by officers constituted garden variety emotional damages. *Id.* The defendants disagreed, so Plaintiff filed a motion for a protective order. *Id.*

Accordingly, the issue before the *Flowers* court was whether the scope of plaintiff's proposed testimony at trial honored the plaintiff's agreement to seek only garden variety damages. *Id.* at 229. Because the court found that the briefing was not fully developed as to what the plaintiff was proposing to say at trial, the court could not say with confidence that the plaintiff's trial testimony would be limited to the "kind of simple, usual, and ordinary emotions approved by the cases." *Id.* If the plaintiff's trial testimony would not be limited to those emotions, the court held, the plaintiff could not insist on maintaining psychotherapist-patient privilege. *Id.* Therefore, when the *Flowers* court held that the plaintiff had the choice on how to proceed, the court was looking ahead to trial for a plaintiff who had already agreed to limit his emotional damages to the garden variety kind, and who had not yet produced any psychological records. *See id.* at 228 (commenting

7

that plaintiff may be better off in disclosing psychological records to make a broader damages claim but that that choice was for plaintiff and plaintiff's counsel to make).

Here, Coleman has not promised to limit his emotional damages to the garden variety kind. Rather, Coleman has provided discovery responses and produced mental health records indicating that he is pursuing damages for psychological injuries and symptoms. Coleman attempts to dangle the carrot in his brief by stating, "[a]lthough unlikely, Plaintiff may decide to invoke the privilege." Doc. [168] at 5. The problem is that Coleman has already waived the privilege, as evidenced by his pleadings, discovery responses, and document productions. Moreover, not even the *Flowers* court advocated for the kind of fence-riding Coleman is endeavoring. *See Flowers*, 274 F.R.D. at 229 ("[Plaintiff] cannot leave the matter in its current indeterminate state"). Thus, *Flowers* does not persuade the Court that Coleman has not already waived psychotherapist-patient privilege.

Coleman's other cited authority, *Kronenberg*, *Glaze*, and *Caine* fare no better. In *Kronenberg*, an Americans with Disabilities Act case, an attorney alleged that his former law firm had violated the ADA by failing to make appropriate accommodations for his back condition and subsequently terminating him. *Kronenberg*, 747 F. Supp. 2d at 987. There, the court held that the plaintiff had not waived psychotherapist-patient privilege because the plaintiff, unlike Coleman, alleged only physical disability, did not rely upon his mental health records, did not allege emotional injury, and did not seek damages for emotional distress. *See id.* at 997 ("What is certain is that Mr. Kronenberg's alleged disability is physical, that he has not injected his mental state into the case, and that he has disavowed that mental health or emotional issues will have any role to play in the presentation of his case or in his request for damages. There is simply no basis, therefore, to conclude that he has waived his psychotherapist-patient privilege."). The stark

8

contrast between the *Kronenberg* plaintiff and Coleman, who has injected his psychological treatment and conditions into this litigation, make *Kronenberg* inapposite.

In *Glaze*, on an order on a motion to quash, the court held that a subpoena calling for "any and all medical records" was overly broad. Doc. [168-3] at 2-3. Because it was "not clear" at the time if the plaintiff was "seeking 'garden variety' emotional damages," the *Glaze* court further held that the plaintiff had not yet waived psychotherapist-patient privilege and ordered that the subpoenaed records be returnable to plaintiff's counsel, so that counsel could review the documents for psychotherapist notes. *Id.* at 3. Coleman, unlike the plaintiff in *Glaze*, has made it quite clear that he is seeking emotional damages beyond the garden variety kind. *Glaze* is unhelpful as a result.

*Caine* contains the most similar facts to the ones presented here, yet fails to sway the Court. The plaintiff in *Caine*, after serving 25 years for a murder conviction, sued the City of Chicago and former police officers. *Caine*, 2012 WL 6720597, at *1. In his complaint, the *Caine* plaintiff alleged that he was tortured into confessing to the murder and stated that he "suffered 'severe emotional distress and anguish' as a result of the actions of Defendants." *Id.* at *3. In answer to interrogatories, the *Caine* plaintiff likewise "specifically list[ed his] emotional damages as 'immense' including 'several mental breakdowns stemming from his wrongful incarceration' that caused him to seek psychiatric care at least twice, together with experiencing feelings of paranoia, anxiety, and sleeplessness, among others." *Id.* The defendants moved to compel the plaintiff to sign a HIPAA waiver for mental health records on the grounds that the plaintiff waived psychotherapist-patient privilege when he "put his psychological health directly at issue in the Complaint, and characterized his mental and emotional injuries, both in the complaint and during the course of discovery, as severe." *Id.* at *1. The plaintiff did not believe the claims at issue

required a blanket waiver of the privilege, so the plaintiff offered the compromise of having his attorneys review the mental health records prior to turning them over to the defense, similar to Coleman's offer here. *Id.* The *Caine* court found the plaintiff's proposal reasonable and adopted it. *Id.* at *4.

The Court is not persuaded by *Caine*. First, the case is distinguishable in that the defendants in *Caine*, unlike the defendants here, did not claim that the plaintiff had already produced psychotherapy records of mental health treatment which made observations as to the severity of the plaintiff's emotional and psychological trauma. Doc. [165] at 2. Thus, the privilege is already waived here, unlike *Caine*.

Second, the Court shares Defendants' concern that allowing a plaintiff to review the mental health records first and create a privilege log of sorts would allow the plaintiff to cherry-pick favorable mental health records and claim privilege over records weakening their emotional damages claims, thereby enabling the plaintiff to use the privilege as both shield and sword. Doc. [171] at 3. *See Santelli*, 188 F.R.D. at 308 (internal quotation marks omitted) (allowing a party to put forward a "selective history, while preventing the veracity of that history from being tested" is "unacceptable, as it would allow the privilege holder to thwart the truth seeking process by using the privilege as both a shield and a sword"). Plaintiffs and Defendants should have an equal opportunity to argue in favor or against emotional damage, respectively, using mental health records.

In sum, Coleman's pleadings, interrogatory responses, and document productions demonstrate that there has already been a waiver of psychotherapist-patient privilege in this case, no matter which approach is applied. Because the Court finds that Coleman's proposal to review

the mental health records first would allow Coleman to unfairly utilize the privilege as both sword and shield, and because the privilege is already waived, the Court rejects Coleman's proposal.

## II. Mental Health Records from Two Years Preceding Plaintiffs' Arrests Are Discoverable

Having found waiver, and having rejected Coleman's proposal to initially review the mental health records for privilege, the Court turns next to what, if any, temporal and topical limits will be imposed on Defendants' requests for mental health records. Coleman argues that "Defendants are seeking unrestricted access to all of Plaintiffs' mental health records from their entire lives." Doc. [168] at 3. Defendants claim that they are only requesting mental health and substance abuse records from 1989 (five years prior to Plaintiffs' arrests) to the present. Doc. [171] at 4. The Court finds that either approach exceeds the scope of discovery under Rule 26.

Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, a court "must limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 1 likewise directs that the civil rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Finally, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

According to Defendants, Plaintiffs' mental health records from five years before arrest to the present are relevant to Defendants' assessment of the strengths and weaknesses of Plaintiffs' emotional damages claims, as well as the determination of any pre-existing mental health

conditions that could have contributed to Plaintiffs' emotional damages. Doc. [171] at 4. Defendants further assert the general proposition, also espoused in *Laudicina*, that mental health records are relevant when emotional damages are claimed because discovery related to damages is relevant. Doc. [165] at 4; *see Laudicina*, 328 F.R.D. at 518. Coleman, in turn, responds that temporal and topical limits on mental health records are imposed routinely, and that such limits should be placed here, although Coleman does not propose any specific parameters.

The relevance of Plaintiffs' mental health records in this case, particularly from the time of Plaintiffs' arrest to the present, is readily apparent. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Here, as previously discussed, Plaintiffs' complaints contain numerous emotional damages claims. *See, e.g.*, Doc. [144] ¶¶ 139, 146, 165. Plaintiffs have further brought claims of Intentional Infliction of Emotional Distress. *See, e.g.*, *id.* ¶¶ 176-78. Fulton has asserted that he has suffered depression, anxiety, and "continuing psychological damages," as a result of Defendants' conduct. Doc. [165-2] at 8-9, 11. Coleman has informed Defendants that "the stress and trauma of his wrongful imprisonment has had, and will continue to have, emotional and physical manifestations well into the future." Doc. [165-3] at 15.

At the very least, these representations by Plaintiff indicate that their mental health records from 1994 (time of arrest) to the present have a tendency to make Plaintiffs' claims of emotional and psychological damages more or less likely. As an example, the Court can easily envision a mental health record from 60 days into Coleman's incarceration reflecting Coleman's experiencing sleeplessness or hopelessness as a result of his incarceration. Such a record would buttress Coleman's emotional damages claims. On the other side of the coin, a therapist's notes from recent

days could provide a positive report as to Coleman's mental health, or discuss other traumatic events in Coleman's life, having nothing to do with Defendants.[2] A record of the latter variety could make it less likely that Defendants' conduct caused Coleman severe emotional trauma. Because Plaintiffs have claimed that they have suffered, and will continue to suffer, emotional damages as a result of their wrongful arrests in 1994 and their subsequent incarcerations of 23 years, mental health records from, at least, 1994 to the present, are highly probative to Plaintiffs' emotional damages claims.

Pre-1994 mental health records could have relevance here too. Coleman has alleged that his confession was the product of "mental abuse," and that Defendants used "psychological intimidation and manipulation" to coerce a false confession. Doc. [144] ¶¶ 54, 78. Mental health records near the time of Coleman's confession could speak to Coleman's state of mind at the time of his confession. For instance, a 1993 record could show that Coleman suffered from a mental health condition that may have impacted his susceptibility to be intimidated or manipulated. Moreover, a pre-1994 record could show that Coleman had already suffered from a mental health condition, which would allow Defendants to attack the issue of causation of damages. As a result, some pre-1994 mental health records are relevant. Yet, the question remains of how far back the Defendants should be allowed to go.

Balancing the privacy interests that Plaintiffs have in the records with the relevancy of Plaintiffs' pre-arrest mental health records, the Court exercises its substantial discretion in discovery to limit the scope to mental health records from two years prior to Plaintiffs' arrests. At

---

[2] This possibility that mental health records exist regarding traumas, pains, or hardships that are unrelated to Defendants' alleged conduct is why the Court declines to impose topical limits at this time. A limit restricting discovery to mental health records concerning emotional or psychological injury in connection with Defendants' conduct could exclude evidence that has a tendency to make it less likely that Plaintiffs' suffered severe emotional damages caused by Defendants' conduct.

the time of Coleman's arrest, he was 25 years old. Doc. [144] ¶ 12. It appears to the Court that a mental health record from five years prior to arrest, when Coleman was only 20 years old, would shed little light, if any, on Coleman's mental state at the time of his confession. Whereas mental health records in the two years preceding Coleman's arrest and confession have a higher probative value as to Coleman's mental state at the time of confession, worthy of the burden of production and the privacy interests intruded.

Discovery of Plaintiffs' mental health records for the two years prior to arrest is moreover proportional to the needs of the case. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). From the pleadings and discovery discussed above, the emotional damages issues in this case appear to be significant, high-dollar issues. *See also* Doc. [171] at 3 (Defendants predicting Coleman will seek millions of dollars for emotional damages). Indeed, in wrongful conviction cases in this district, it is typical for plaintiffs to ask the jury to award $1 million per year for every year of incarceration. Further, Coleman has not claimed, and the Court is not concerned, that the production of mental health records would be unduly burdensome for Coleman, Hill Correctional Center, or the institutions yet to be subpoenaed. The Court thus easily finds that discovery into Plaintiffs' mental health records from the two years prior to each Plaintiff's arrest is proportional to the needs of the case.

Having found that Plaintiffs waived psychotherapist-patient privilege, and that two years pre-arrest is the proper temporal bookend in this case, the Court orders that discovery into

Plaintiffs' mental health records be limited to records from 1992 to the present.³ This holding applies to Fulton as well because he waived his right to contest Defendants' motion, *see Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011), and because the Court finds that the similarity in Fulton's pleadings and discovery responses makes the reasoning above apply to Fulton as well. With respect to the HIPAA and Mental Health Protective Order, the Court accepts Coleman's representation that, aside from Coleman's proposal to review the records for privilege (which the Court has already rejected), the orders proposed by each party are "substantively the same," Doc. [168] at 8, and enters Defendants' proposed order for Fulton and Coleman, Doc. [165-4].

## Conclusion

For the foregoing reasons, Defendants' Joint Motion Challenging Plaintiffs' Psychotherapist-Patient Privilege Assertion, Doc. [165], is granted. Plaintiffs have waived psychotherapist-patient privilege. Discovery into the mental health records is limited to records from 1992 to the present. Defendants' proposed HIPAA and Mental Health Protective Order, Doc. [165-4], is entered for Fulton and Coleman.

**SO ORDERED.**

Dated: December 23, 2019

                                                       Sunil R. Harjani
                                                      United States Magistrate Judge

---

³ The Court's order is limited to mental health records, and does not pertain to "substance abuse" records. Defendants appear to lump both types of records together in their briefing. However, neither party provided analysis on the discoverability of substance abuse records.