**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DERRELL FULTON | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8696 |
| | ) | |
| v. | ) | Judge Martha M. Pacold |
| | ) | |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONDENTS' MOTION TO QUASH SUBPOENA
FOR THE DEPOSITION OF ERIC SUSSMAN**

Third Party Respondent Cook County State's Attorney's Office, by its attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistant Jessica M. Scheller, and Third Party Subpoena Respondent Eric Sussman, by his attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistant Lyle K. Henretty, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45, bring this motion to quash the subpoenas for Eric Sussman's deposition in the above-referenced case. In support, the Respondents state as follows:

I.      **Relevant Procedural History**

In May of 1997, Plaintiff Derrell Fulton ("Fulton") was convicted of the 1994 aggravated sexual assault and murder of Antwinica Bridgeman. *See* ECF No. 230. In 2016, the Conviction Integrity Unit ("CIU") of the Cook County State's Attorney's Office ("CCSAO") initiated a re-examination of Plaintiff's conviction. *Id.* Pursuant to a motion by the CCSAO, Plaintiff's conviction and sentence were vacated on November 17, 2017. *Id.* In March 2018, the Circuit Court of Cook County granted Fulton a Certificate of Innocence ("COI"). The CCSAO did not object to the issuance of the COI.

Plaintiff has now filed an eleven-count Complaint against the City of Chicago, numerous former Chicago Police Department ("CPD") officers and their estates, and former CCSAO Assistant State's Attorney ("ASA") Harold Garfinkel, alleging various state and federal claims related to Plaintiff's underlying criminal case. *Id*. Counsel for the CPD Defendants have issued, and the CCSAO has accepted service of, subpoenas for the deposition of former First Assistant State's Attorney Eric Sussman. *See* **Ex. A, subpoena.**

Based on conversations and e-mails between the undersigned and counsel for the CPD Defendants, the CCSAO anticipates that the CPD Defendants intend to depose Mr. Sussman regarding the following subject matters: 1) the factors taken into account, deliberations, and reasoning behind the CCSAO's decision to move to vacate the sentence and conviction of Plaintiff; and 2) the factors taken into account, deliberations, and reasoning behind the CCSAO's decision to not contest Plaintiff's petition for a COI. During these discussions, the CPD Defendants have argued that there has been a waiver of any and all privileges related to these topics. The CPD Defendants have declined to provide evidence to support this argument, other than generally referring to the ruling in an unrelated case, *Brown v. City of Chicago, et al.*, 18-cv-7063. However, the CPD Defendants have declined to elaborate on how the ruling would affect this case, if at all. Additionally, the CPD Defendants stated that there was an article in the Chicago Reader newspaper, wherein former CCSAO employee Mark Rotert waived deliberative process *vis-à-vis* Plaintiff. The undersigned requested more information on the article, but the CPD Defendants provided no further information.

## II.    Argument

The Respondents move to quash the subpoena because: 1) Sussman was a high-ranking public official who will be unable to provide any relevant non-privileged evidence; 2) the

communications sought are protected by the deliberative process privilege; and 3) any mental impressions related to the privileged communications are likewise protected by the mental process privilege and work-product doctrine.

> 1. Sussman cannot provide any Relevant Non-Privileged Testimony.

High-ranking governmental officials should not be subject to giving depositions unless the testimony sought will lead to admissible evidence relevant to the disposition of the case. *See*, *e.g., Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999), *cert. denied*, 528 U.S. 986 (1999) (holding that plaintiff was not entitled to depose the Illinois Attorney General regarding his employment discrimination claim.) *Gauthier v. Union Pac. R.R. Co.*, 2008 U.S. Dist. LEXIS 47199, at *15 (E.D. Tex. June 18, 2008) (applying to both current and former high-level officials).

Mr. Sussman was the First Assistant State's Attorney, overseeing the seven bureaus of the CCSAO at all times relevant hereto. Whatever non-privileged information Mr. Sussman could provide is available from other sources, namely, the Assistant State's Attorney assigned to the case at the time, or a 30(b)(6) deposition. The CPD Defendants are well aware of this fact. In fact, an identical attempt in a similar case by other CPD defendants and the City of Chicago to depose Joseph Magats, the current First Assistant State's Attorney, about similar subject matter has been denied in the past. *See*, *e.g*., 10/17/19 Order, *Gray v. City of Chicago,* 18-cv-2624, N.D. Ill. Apr. 11, 2018, ECF No. 184 (quashing subpoena for Mr. Magats seeking his testimony regarding the CCSAO's decisions related to plaintiff's post-conviction litigation).

Further, to the extent the CPD Defendants intend to depose Mr. Sussman regarding his personal opinions *vis-à-vis* the underlying facts, or use him to challenge the decisions made by the CCSAO, this line of questioning would be wholly inappropriate and irrelevant to any claim or defense in this case. Mr. Sussman is not an "expert witness," and elicited opinions regarding the

merits of the instant litigation, including whether or not the Plaintiff or Defendants engaged in wrongdoing, would invade the province of the jury.

In a good faith attempt to resolve this matter, CCSAO agreed to produce a Federal Rule of Civil Procedure 30(b)(6) witness to testify regarding the CCSAO's decision to move to vacate Mr. Fulton's conviction and sentence. Further, had the CPD Defendants agreed to these terms, the CCSAO agreed not to assert its deliberative process privilege as to the decision to drop the charges, or as to any statements made by the CCSAO or its employees to the press. The CCSAO would maintain all other privileges, including the work product privilege and the deliberative process privilege related to Plaintiff's Certificate of Innocence. The CPD Defendants rejected this offer and made no counterproposal.

As such, Mr. Sussman has no recourse other than to move to quash the subpoena. As discussed further below, because the majority of information Mr. Sussman could provide would be the logic and reasoning behind the CCSAO's decisions to move to vacate the conviction and/or COI evaluation, there is no valid basis to depose Mr. Sussman at this time. As such, the subpoena for his deposition should be quashed.

2.  The Information Sought is protected by the Deliberative Process Privilege.[1]

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N.L.R.B. v. Sears, Roebuck & Co*., 421 U.S. 132, 150-51 (1975)). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality

---

[1] As noted above, the CPD Defendants have refused to provide deposition topics or engage in any discussion regarding the specific information on which they intend to depose Mr. Sussman. As is also noted above, the CCSAO remains willing to compromise on this issue, but cannot do so until the CPD Defendants provide more detailed information.

of agency decisions by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (internal quotations omitted). To this end, the privilege shields "communications that are part of the decision-making process of a governmental agency." *Farley*, 11 F.3d at 1389. Privileged communications include not only conversations, but "documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). Although the deliberative process privilege does not justify the withholding of purely factual material, it does prohibit the disclosure of "factual matters inextricably intertwined with such discussions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004).

A two-step process exists for determining whether the deliberative process privilege applies. First, the government must show that the privilege applies to the information sought. *Ferrell v. United States HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). For the government to satisfy its prima facie threshold, three things must occur: 1) the department head with control over the matter at issue must, after personal consideration of the issue, make a formal claim of privilege; 2) the designated official must articulate, typically by affidavit,[2] their reasons for preserving the confidentiality of the information sought; and 3) the official must specifically identify and describe the documents or information sought. *Id.*; *see also Evans v. City of Chicago*, 231 F.R.D.

---

[2] Although an affidavit is the "typical" manner by which the privilege is asserted, a formal affidavit is not always required when the information sought and the reasons asserted for its privilege are readily apparent to the Court. *See, e.g., Tumas v. Bd. of Educ.*, 06 C 1943, 2007 U.S. Dist. LEXIS 56242 at * 8-9 (N.D. Ill. July 31, 2007) (excusing affidavit requirement when it was apparent from pleadings what testimonial and documentary evidence was being sought). Should the Court determine an affidavit is necessary, the CCSAO will provide the requisite affidavit as failing to so in the first instance does not waive the privilege. *See Guzman v. City of Chicago*, 09 C 7570, 2011 U.S. Dist. LEXIS 1730, at * 6 (N.D. Ill. Jan. 1, 2011) (holding that the government's failure to timely provide an affidavit is not fatal to the claim of privilege).

302, 316 (N.D. Ill. 2005). If the government makes out a *prima facie* case that the privilege applies, the burden then shifts to the party seeking disclosure to establish: 1) "a particularized need" for the information sought; and 2) that the party's need for the document outweighs the government's interest in confidentiality. *Farley*, 11 F.3d at 1389; *Ferrell 177 F.R.D. at 428.* In undertaking such an analysis, a court must balance the requestor's need for disclosure against the government's need for secrecy, considering such factors as: 1) the relevance of the documents to the litigation; 2) the availability of other evidence that would serve the same purpose as the documents sought; 3) the government's role in the litigation; 4) the seriousness of the litigation and the issues involved in it; and 5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that it would hinder frank and independent discussion about governmental policies and decisions. *Ferrell*, 177 F.R.D. at 429; *see also Saunders v. City of Chicago*, 12 C 958, 2015 U.S. Dist. LEXIS 105571, at * 31-32 (N.D. Ill. Aug. 12, 2015).

The information sought from Mr. Sussman is unquestionably protected by the deliberative process privilege and has been previously held so by Courts in the Northern District. For instance, in *Saunders*, the plaintiff brought a motion to compel a high-ranking ASA to answer deposition questions about the content of the CCSAO's deliberations regarding the dismissals of charges and its decisions regarding plaintiff's petition for a COI. *Saunders*, U.S. Dist. LEXIS 105571, at * 58-63. The plaintiff also sought to compel the ASA to answer questions regarding his personal beliefs about the plaintiff's guilt or innocence, the weight and significance of various evidence, and the relevance of newly discovered evidence. *Id*. at 63-67. The court, in holding that the deliberative process privilege was applicable to these inquiries, further held that, upon balancing the interests, the plaintiff had not overcome his burden to establish a particularized need that outweighed the

6

government's interests. *Id*. at 76. Although the court conducted a full analysis, of particular significance to the court's holding was the policy underlying the privilege itself – the need to protect the quality of agency decisions by protecting open and frank discussions among its members. *Id*. at 76 ("Allowing Plaintiffs to have access to such evidence would set a precedent for others similarly situated to seek discovery of the [CCSAO's] confidential information and allow them to have full access to closed session discussions as fodder for potential [civil rights] claims. This, in turn, would have a negative impact on the quality of prosecutorial decisions made by the State's Attorney and his or her staff.") (internal citations or quotation omitted). Ultimately upholding the CCSAO's objections, the court denied the portion of the plaintiff's motion seeking to compel the ASA to answer the questions posed. *Id*.

As *Saunders* establishes, the CCSAO's deliberations regarding its decisions to seek to vacate a conviction or to object to a Certificate of Innocence are privileged. *See also Hill v. City of Chicago*, 13 C 4847, 2015 U.S. Dist. LEXIS 190661, at * 10-11 (N. D. Ill. May 28, 2015) (holding that the deliberations underlying a decision to bring criminal charges are privileged). Yet, the CPD Defendants will be seeking the exact same information—despite analogous precedent forbidding such disclosures. Because the information sought is protected by the deliberative process privilege, and because the CPD Defendants will not be able to overcome their burden to establish a particularized need, this Court should quash the subpoenas directed to Mr. Sussman.[3]

3. <u>The Mental Impressions related to the Privileged Communications are Privileged</u>.

---

[3] Should the Defendant Officers articulate a reason for Sussman's deposition that would not intrude upon a privilege, the Respondents would respectfully request that this Court enter a protective order prohibiting inquiry into the anticipated subject matters.

It is clear from the *Saunders* opinion that, not only are the actual communications privileged, but so too are the internal thoughts and mental processes attendant to the deliberations. As the *Saunders* court noted, inquiries into personal beliefs cannot be separated from the actual deliberations, as the beliefs and opinions formed are necessarily shaped by the protected deliberations. *Saunders*, U.S. Dist. LEXIS 105571, at * 63-67 ("This Court finds that the privilege was properly invoked by Valentini in response to these irregular deposition questions. It is likely that during the SAO's deliberations about the prosecutorial decisions, they discussed the weight of the evidence and whether it was sufficient for a jury to convict, as well as the other questions posed to Valentini. Since Valentini was present for the deliberations, it is understandable that providing answers to the questions would reveal analysis, arguments, and discussion from the deliberations."). While the *Saunders* court did not invoke the actual term, the mental process and internal deliberation are likewise protected by the "mental processes privilege." *See Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 326-26 (D.D.C. 1996) (holding that the mental processes privilege is "inextricably intertwined" with the deliberative process privilege and precludes "prob[ing] the mental process" of government officials); *see also Mendez v. City of Chicago*, 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at * 4 (N.D. Ill. Mar. 19, 2020) (quashing subpoena pursuant to the mental processes privilege seeking deposition of sitting judge regarding the reasoning for his decision). Because the mental processes privilege analysis is the same as the deliberative process privilege, *see United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005), the CPD Defendants are likewise prohibited from inquiring into the mental impressions of Mr. Sussman.

While the mental processes privilege is confined to pre-decisional deliberation, the common law work-product doctrine, a more expansive doctrine than the mental processes

privilege, likewise prohibits inquiries into the Deponents' mental processes. As the Supreme Court has long held, the mental impressions and "intangible" work product of attorneys are "inviolate." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). As such, the intangible work product that Mr. Sussman developed during his deliberations regarding Brown's post-conviction litigation is privileged and protected.

## III.   Conclusion

For the reasons set forth herein, and in the underlying brief, the Motion to Quash should be granted.

Date: October 9, 2020                      Respectfully submitted,


KIMBERLY M. FOXX
State's Attorney of Cook County

By: */s/ Jessica M. Scheller*
Jessica M. Scheller
Assistant State's Attorney
Civil Actions Bureau
500 Richard J. Daley Center Place, 5th Floor
Chicago, IL 60602
(312) 603-6934
Jessica.Scheller@cookcountyil.gov

*For Respondent CCSAO*


By: */s/ Lyle K. Henretty*
Lyle K. Henretty
Assistant State's Attorney
Conflicts Counsel Unit
50 West Washington, Suite 2760
Chicago, IL  60602
(312) 603-1424
Lyle.Henretty@cookcountyil.gov

*For Respondent Eric Sussman*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on October 9, 2020, I electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ <i>Lyle K. Henretty</i></u>